DECISION
{¶ 1} Relator, Heidi Wyrick ("relator"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio *Page 2 
("commission") to vacate its order denying her permanent total disability ("PTD") compensation and to enter a new order granting that compensation.
 {¶ 2} Pursuant to Civ. R. 53 and Loc. R. 12(M) of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate concluded that the commission did not abuse its discretion and recommended that this court not issue the requested writ of mandamus. Relator filed objections to the magistrate's decision, and the commission filed a memorandum opposing the objections. This cause is now before the court for a full review.
 {¶ 3} The commission denied relator's application for PTD compensation based upon Dr. Turner's opinion that relator is capable of performing sedentary work, and based upon an evaluation of the relevant nonmedical factors. Among other conclusions, the magistrate rejected relator's argument that the commission misstated a portion of Dr. Turner's opinion, and also rejected relator's contention that the commission had not adequately taken into account her work history, specifically, an Ohio Rehabilitation Services Commission ("RSC") closure report.
 {¶ 4} In her objections, relator presents the same arguments that she presented in her brief before the magistrate. We agree with the magistrate's conclusions that even if the commission misstated part of Dr. Turner's opinion, this error is irrelevant because the portion of Dr. Turner's report upon which the commission relied is the doctor's unambiguous opinion that relator is capable of sedentary work. We further agree with the magistrate that the commission considered the relevant nonmedical factors pursuant to Ohio Adm. Code 121-3-34(D)(2)(b). The commission must cite the evidence upon which *Page 3 
it relied. State ex rel. Lovell v. Indus. Comm., 74 Ohio St.3d 250, 252,1996-Ohio-321, 658 N.E.2d 284. The commission was not required to explain why it did not rely upon the RSC closure report. We cannot reweigh this or any other evidence, nor can we order the commission to do so. State ex rel. Kay v. Indus. Comm., Franklin App. No. 08AP-31,2009-Ohio-326, ¶ 49. For these reasons, relator's objections are overruled.
 {¶ 5} Having undertaken an independent review of the record, we find that the magistrate has properly determined the facts and the applicable law. Accordingly, we overrule relator's objections, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, and we deny the requested writ of mandamus.
Objections overruled; writ of mandamus denied.
 BRYANT and BROWN, JJ., concur. *Page 4 
 APPENDIX A MAGISTRATE'S DECISION Rendered on September 19, 2008 IN MANDAMUS {¶ 6} In this original action, relator, Heidi Wyrick, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her permanent total disability ("PTD") compensation and to enter an order granting said compensation. *Page 5 
Findings of Fact: {¶ 7} 1. On February 10, 2002, relator sustained an industrial injury while employed as a vice president and owner of a skating rink. The industrial claim (No. 02-805072) is allowed for "contusion of back; contusion right shoulder region; aggravation of preexisting degenerative disc disease L4-L5; aggravation of preexisting degenerative disc disease L5-S1."
 {¶ 8} 2. On November 29, 2006, relator filed an application for PTD compensation.
 {¶ 9} 3. Under the education section of the PTD application, relator indicated that she is a high school graduate. Among other information sought, the application form posed three questions to the applicant: (1) "Can you read?" (2) "Can you write?" and (3) "Can you do basic math?" Given a choice of "yes," "no" and "not well," relator selected the "yes" response for all three queries.
 {¶ 10} 4. The PTD application form also asks the applicant to provide information regarding work history. Relator indicated that from January 1991 to May 2, 2006, she was employed in the roller skating business. She describes the basic duties of her job as follows: "Sold tickets, involved in daily record keeping and banking. No supervision involved, no technical expertise necessary and reading [and] writing were minimal."
 {¶ 11} 5. In support of her PTD application, relator submitted the August 21, 2006 report of attending physician Gary J. Frantz, M.D., which stated:
 * * * Heidi has been a patient of mine for many years. Heidi currently suffers from debilitating pain directly related to her industrial injury of February 10, 2002 including contusion of *Page 6 
the back, contusion of the right shoulder, and aggravation of pre-existing degenerative disc disease at L4-5 and L5-S1. Due to this pain, it is my medical opinion that Heidi is permanently and totally disabled due to the pain she suffers. In spite of multiple previous consultations, Mrs. Wyrick has continued to suffer chronic pain. Treatment of chronic pain entails the use of multiple different medications which attempt to alleviate the pain by different mechanisms. Without these medications[,] Mrs. Wyrick would be suffering an extreme amount of pain. * * *
 {¶ 12} 6. On April 20, 2007, at the commission's request, relator was examined by Robert Turner, M.D., who wrote:
 Her past history is quite significant in that she has had five spinal operations, all done prior to this injury, the first being done at age 19. She has had discectomies, she's had two cage placements, she has had one failed fusion and one successful fusion, none of which have made her pain any better. She describes the pain as constant. It is primarily in the low back and radiates through the buttocks, though she really doesn't have pain that radiates down the foot much. The pain is left sided, not right sided. It is brought on by just about everything that she does. She can sit for a short period of time, then she needs to lie down. She can lie for a short period of time. She cannot lie on her side because her leg hurts. She cannot lie on her back very long because her back hurts. She cannot walk very long, so she is very limited in just about all activities. She cannot lift at all. She has not attempted to return to work. * * *
 * * *
 OPINION: The injured worker has reached maximum medical improvement with regard to each specific allowed conditions which are noted above. Based on AMA Guides, 5th Edition, her percentage of impairment is 25%. Using Table 15.3 of the AMA Guides, 5th Edition, this would be a DRE Category V impairment.
 The problem, of course, is relating her present symptoms to her injury rather than her five previous operations. It is very difficult, but in my judgment a 25% impairment is quite reasonable for the allowed conditions noted above. *Page 7 
 {¶ 13} 7. On April 20, 2007, Dr. Turner completed a physical strength rating form. The form instructs the physician to indicate the type of work the claimant can do: "Based solely on impairment due to the allowed condition(s) in the claim within my specialty and with no consideration of the injured worker's age, education, or work training." Dr. Turner indicated by checkmark that relator is capable of sedentary work.
 {¶ 14} 8. In support of her PTD application, relator submitted a vocational report from psychologist Meleesa A. Hunt, Ph.D., who concluded:
 The results of today's assessment indicate that Ms. Wyrick is permanently and totally disabled in the vocational realm due to functional limitations imposed by her Industrial injury. This determination is made with consideration of age, education, work history, psychological state, and other social factors. Within a reasonable level of vocational certainty, Ms. Wyrick is incapable of performing any type of sustained, remunerative employment. This opinion is offered based on the information available to this examiner on the date of today's assessment. Efforts at vocational rehabilitation are unlikely to be beneficial. Ms. Wyrick has already had the ideal chance to return to work in an environment with maximum flexibility and minimal externally imposed demands (i.e. her own business). She was unable to meet the demands of that specialized environment. She does not have the physical capability, per medical documentation, to sustain any type of work activity consistently enough to maintain employment or earn any substantive amount of money.
 {¶ 15} 9. The record contains a closure report dated September 10, 2007, from the Ohio Rehabilitation Services Commission ("RSC"). The closure report form contains preprinted reasons for closure. The following reason for closure was selected: "Services from RSC cannot help you become employed at this time. You have been provided trial work experience and there is clear and convincing evidence that you cannot be employed due to the severity of the disability." *Page 8 
 {¶ 16} The RSC closure report further states: "You attempted a Community Based Assessment through Greenleaf at Barnes and Noble Bookstore to determine your readiness for employment but were unable to complete the work experience due to experiencing limitations associated with your disability."
 {¶ 17} 10. Following an October 10, 2007 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. The SHO's order states:
 The Hearing Officer finds that the claimant was injured on 2/10/2002 when[,] while working as a vice-president and owner of a skating rink, she was salting the front of the rink and off to the right of the building, when attempting to go downstairs[,] she slipped down the steps and hit her low back and right shoulder.
 The Hearing Officer finds that there have been no surgeries as a result of this injury sustained in this matter.
 The Staff Hearing Officer finds that based on the report of State Specialist Dr. Turner dated 4/20/2007, the claimant's request as indicated for an allowance of her permanent and total disability application is denied.
 The Hearing Officer finds that the conditions which are allowed in this claim are contusion of the back, contusion of the right shoulder region, aggravation of pre-existing degenerative disc disease at the L4-5 and L5-S1 level.
 It must be noted that the claimant had five prior surgeries to her low back which were non work-related. The Hearing Officer finds that based on her testimony at hearing the claimant uses a back brace and a leg brace and tries not to use a cane, but sometimes she must.
 Based on the report of Dr. Turner, he finds that the claimant has had an MRI and EMG done a few months after surgery, the MRI showed post-surgical changes from as indicated the surgeries which were non work-related and the EMG did show severe sensory neuropathies. Dr. Turner indicates that the severe sensory neuropathies are from the prior surgeries and are not related to the injury upon which this claim is predicated. Based on his examination the doctor found that *Page 9 
the claimant ambulates normally and is not in terrible distress at the office at the time of the examination, that she had no lumbar lordosis at all and had limited range of motion to the lumbar area. The doctor indicates that the claimant could ambulate on her heels and toes and that her straight leg raising test was positive on both sides. The reflexes were normal and her motor function exam appeared to be normal.
 Based on his exam[,] he found that the claimant had reached maximum medical improvement and had a 25% whole person impairment.
 The doctor found that the claimant was capable of sedentary work.
 Sedentary Work:
 Exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.
 Based on the fact that the claimant can not be deemed permanently and totally disabled based solely on the allowed conditions in this claim, description of the claimant's non-medical disability factors is in order. The claimant's age is 40 years old. The Hearing Officer finds that the claimant's age is a positive factor in her attempting to find entry-level positions as she has approximately 20 to 25 years of workforce participation available.
 Claimant's education consists of graduation from high school. The claimant testified at hearing that she had no secondary schooling as far as college is concerned and she has had no seminars or no training in any other field. The claimant's work experience as indicated is that she was part owner of a roller rink when as indicated in her testimony at hearing she sold tickets and did record keeping and bookkeeping for the roller rink. She indicates that she can read, write and do basic math and that she can drive a car. *Page 10 
 Dr. Turner in his report indicates that due to the extremely extensive back problems that she has had prior to the injury upon which this claim is predicated in which she has had five unrelated surgeries that he could not definitely establish that her work injury has caused her to be permanently and totally disabled. It is his opinion that as indicated he is unable to establish that her current disability is not related to the prior back surgeries.
 The Staff Hearing Officer finds that the claimant's education is a positive factor in her being able to find entry-level positions and the fact that in her work experience she did record keeping and bookkeeping for her establishment proves that she has the clerical background to seek entry-level positions.
 The Staff Hearing Officer finds as indicated as based on a report of Dr. Turner that the claimant's application for permanent and total disability which was filed on 11/29/2006 is denied, and the claimant is not to be deemed permanently and totally disabled.
 The Hearing Officer finds that based on the claimant's prior occupation as a part owner of a roller rink that the claimant is capable of working as a cashier or in clerical positions which would utilize her experience in record keeping and bookkeeping.
 {¶ 18} 11. On April 3, 2008, relator, Heidi Wyrick, filed this mandamus action.
Conclusions of Law: {¶ 19} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 20} Relator contends that the following portion of the SHO's order misstates Dr. Turner's report:
 Dr. Turner in his report indicates that due to the extremely extensive back problems that she has had prior to the injury upon which this claim is predicated in which she has had five unrelated surgeries that he could not definitely establish that her work injury has caused her to be permanently and totally disabled. It is his opinion that as indicated he is unable to *Page 11 
establish that her current disability is not related to the prior back surgeries.
 {¶ 21} Even if the SHO misstated Dr. Turner's report as relator has argued, any misstatement is not fatal.
 {¶ 22} Ohio Adm. Code 4121-3-34 sets forth the commission's rules for the adjudication of PTD applications. Ohio Adm. Code 4121-3-34(D) provides the commission's guidelines for the adjudication of PTD applications.
 {¶ 23} Ohio Adm. Code 4121-3-34(D)(1) states:
 (h) If, after hearing, the adjudicator finds that the allowed condition(s) is the proximate cause of the injured worker's inability to perform sustained remunerative employment, the adjudicator is to proceed in the sequential evaluation of the application for permanent and total disability compensation in accordance with the provisions of paragraph (D) of this rule. However, should the adjudicator finds [sic] that non-allowed conditions are the proximate cause of the injured worker's inability to perform sustained remunerative employment, the injured worker shall be found not to be permanently and totally disabled.
 (i) If, after hearing, the adjudicator finds that injured worker's inability to perform sustained remunerative employment is the result of a pre-existing condition(s) allowed by aggravation, the adjudicator is to continue in the sequential evaluation of the application for permanent total disability compensation in accordance with the provisions of paragraph (D) of this rule. However, should the adjudicator find that the non-allowed pre-existing condition(s) are the proximate cause of the injured worker's inability to perform sustained remunerative employment, the injured worker shall be found not to be permanently and totally disabled.
 {¶ 24} Ohio Adm. Code 4121-3-34(D)(2) states:
 (a) If, after hearing, the adjudicator finds that the medical impairment resulting from the allowed condition(s) in the claim(s) prohibits the injured worker's return to the former position of employment as well as prohibits the injured *Page 12 
worker from performing any sustained remunerative employment, the injured worker shall be found to be permanently and totally disabled, without reference to the vocational factors listed in paragraph (B)(3) of this rule.
 (b) If, after hearing, the adjudicator finds that the injured worker, based on the medical impairment resulting from the allowed conditions is unable to return to the former position of employment but may be able to engage in sustained remunerative employment, the non-medical factors shall be considered by the adjudicator.
 The non-medical factors that are to be reviewed are the injured worker's age, education, work record, and all other factors, such as physical, psychological, and sociological, that are contained within the record that might be important to the determination as to whether the injured worker may return to the job market by using past employment skills or those skills which may be reasonably developed. (Vocational factors are defined in paragraph (B) of this rule).
 (c) If, after hearing and review of relevant vocational evidence and non-medical disability factors, as described in paragraph (D)(2)(b) of this rule the adjudicator finds that the injured worker can return to sustained remunerative employment by using past employment skills or those skills which may be reasonably developed through retraining or through rehabilitation, the injured worker shall be found not to be permanently and totally disabled.
 {¶ 25} Clearly, the SHO denied the PTD application based upon a finding under Ohio Adm. Code 4121-3-34(D)(2)(b). That is, the SHO relied upon Dr. Turner's opinion that the industrial injury precludes all but sedentary work and, thus, the nonmedical factors must be considered. The SHO determined that the nonmedical factors do not preclude the sedentary employment that Dr. Turner finds that relator can perform.
 {¶ 26} The SHO did not deny the PTD application based upon a finding under Ohio Adm. Code 4121-3-34(D)(1)(i). That is, the SHO did not find that the nonallowed *Page 13 
preexisting conditions are the proximate cause of relator's alleged inability to perform sustained remunerative employment.
 {¶ 27} It is well-established law that nonallowed medical conditions cannot be used to advance or defeat a claim for PTD compensation.State ex rel. Waddle v. Indus. Comm. (1993), 67 Ohio St.3d 452.
 {¶ 28} Clearly, the SHO did not use the preexisting nonallowed conditions to defeat the PTD application. Rather, the SHO relied upon Dr. Turner's opinion that the industrial injury precludes all but sedentary employment.
 {¶ 29} Based upon the above analysis, it is clear that the question or issue relator presents here — whether a certain portion of the SHO's order misstates Dr. Turner's report — is largely irrelevant. Even if Dr. Turner's report is misstated in the SHO's order, the SHO clearly understood that Dr. Turner had opined that the industrial injury precludes all but sedentary employment.
 {¶ 30} Relator further asserts that the SHO failed to consider the medical restrictions set forth in a report signed by Dr. Frantz on August 21, 2007. Relator also asserts that the SHO failed to consider the vocational report from Dr. Hunt and the RSC closure report. Presumably, relator premises this assertion on the fact that the SHO's order does not mention those reports of record. Relator's assertions lack merit.
 {¶ 31} The commission is directed to cite in its orders the evidence upon which it relied. State ex rel. Lovell v. Indus. Comm.,74 Ohio St.3d 250, 252, 1996-Ohio-321. The commission is not required to enumerate the evidence considered nor to explain why evidence is rejected. Id. Accordingly, that the SHO's order does not mention *Page 14 
certain evidence does not prove that it was not considered given the presumption of regularity that attaches to commission proceedings. Id.
 {¶ 32} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus. *Page 1