[Cite as *State ex rel. Bomer v. Indus. Comm. of Ohio*, 2019-Ohio-1328.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Kathleen Bomer, | : | |
| Relator, | : | |
| v. | : | No. 17AP-701 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on April 9, 2019

**On brief:** *Sheldon Karp Co. LPA, Matthew Teeter,* and *David Steiger,* for relator.

**On brief:** [*Dave Yost*], Attorney General, and *Andrew J. Alatis,* for respondent, Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

KLATT, P.J.

{¶ 1} Relator, Kathleen Bomer, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying her application for permanent total disability ("PTD") compensation and to enter an order granting said compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate found that the commission did not abuse its discretion when it determined that relator had voluntarily abandoned the

workforce for reasons unrelated to the allowed conditions in her claim. Therefore, the magistrate has recommended that we deny relator's request for a writ of mandamus.

{¶ 3} Relator has filed objections to the magistrate's decision. Relator contends that the magistrate erred because she failed to address the merits of relator's challenge to the commission's November 2014 decision that denied relator temporary total disability ("TTD") compensation based upon voluntary abandonment of the workforce. Because that finding was later used as the primary basis for the commission's June 28, 2017 denial of relator's PTD request, relator argues the magistrate should have examined the merits of the November 2014 decision. We agree. Nevertheless, for the following reasons, we conclude that relator is not entitled to a writ of mandamus.

{¶ 4} The issue of voluntary abandonment of the workforce was raised in connection with relator's request for TTD in 2014. Relator concedes she has not worked since a claim-related surgery in 2000. The record also reflects that relator was denied PTD in January 2007 and in October 2009 because she was found to be capable of performing sedentary work. Relator concedes she has not participated in any vocational rehabilitation and that she was awarded social security disability benefits in 2007. Relator's social security disability benefits were converted to social security retirement benefits in 2013 when she reached age 66. Relator testified that in approximately 2012, she went to three different temporary agencies in order to find employment. However, she provided no documentation or other details to corroborate that assertion. The commission found that this effort, even if believed, was insufficient to establish that relator made a valid effort to return to the workforce. Therefore, the commission denied relator TTD based upon its finding that relator had voluntarily abandoned the workforce at least by 2009 for reasons unrelated to the allowed conditions in her claim.

{¶ 5} Given the evidence before the commission in 2014, we reject relator's contention that the commission abused its discretion in denying relator TTD based upon voluntary abandonment of the workforce. Again, relator had not worked since 2000 even though she was deemed capable of performing sedentary work in 2007 and in 2009. Relator made no attempt to participate in any vocational rehabilitation. Although relator contended she contacted three temporary employment agencies in 2012, she offered no corroborative documentation or any other details about the nature or extent of those

contacts. She also began receiving social security retirement benefits in 2013 at age 66. Relator's action and/or inaction is indicative of her intent. Given these undisputed facts, there is some evidence to support the commission's finding that relator voluntarily abandoned the workforce for reasons unrelated to the allowed conditions in her claim prior to her 2014 request for TTD.

{¶ 6} The commission's November 2014 decision denying relator TTD based upon her voluntary abandonment of the workforce was the primary basis for the commission's June 28, 2017 decision denying relator's third request for PTD. The commission also noted that relator presented no evidence that she returned to the workforce or engaged in a good-faith effort to return to the workforce since 2014. Therefore, the commission found that relator voluntarily abandoned the workforce and was not eligible for PTD compensation. Given the commission's 2014 decision and relator's failure to demonstrate a good-faith effort to return to the workforce since that decision, we find that the commission did not abuse its discretion in denying relator PTD.

{¶ 7} For these reasons, we sustain relator's objection to the limited extent that the magistrate should have addressed relator's challenge to the commission's November 2014 finding that relator voluntarily abandoned the workforce. Nevertheless, we find that the commission did not abuse its discretion in denying relator's 2014 request for TTD and her 2017 request for PTD based upon her voluntary abandonment of the workforce.

{¶ 8} Following an independent review of this matter, we adopt the magistrate's findings of fact. However, we modify the magistrate's legal analysis as set forth above. In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.

*Objections sustained in part; writ of mandamus denied.*

SADLER and DORRIAN, JJ., concur.

––––––––––––––––––

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Kathleen Bomer, | : | |
| Relator, | : | |
| v. | : | No. 17AP-701 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on October 12, 2018

*Sheldon Karp Co. LPA, Matthew Teeter,* and *David Steiger,* for relator.

*Michael DeWine,* Attorney General, and *Andrew J. Alatis,* for respondent, Industrial Commission of Ohio.

IN MANDAMUS

{¶ 9}   Relator, Kathleen Bomer, has filed this original action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which denied her application for permanent total disability ("PTD") compensation, and ordering the commission to find that she is entitled to that award.

<u>Findings of Fact:</u>

{¶ 10} 1.   Relator was employed as a portable x-ray technician by respondent, Integrated Health Services, Inc.

{¶ 11} 2.  Relator sustained a work-related injury on February 4, 1997 when she slipped on ice and her workers' compensation claim has been allowed for the following conditions:

> Left knee sprain/strain and contusion Coccyx; torn lateral meniscus left knee and torn medial collateral ligament left knee; anterior cruciate ligament tear left knee; post-traumatic osteoarthritis of left knee; chronic pes anserinus bursitis left knee; chronic trochanteric bursitis left hip; depressive disorder and pain disorder associated with both psychological factors and a general medical condition; abrasion face; closed fracture one rib, left; open fracture distal radius, left; closed fracture distal ulna, left; sprain/capsular injury left thumb and left thumb trigger finger; aggravation of pre-existing arthritis, left thumb; dislocation of metacarpophalangeal joint of let thumb; nasal bone fracture; non-displaced fifth metacarpal fracture right; superficial lip laceration; and rib contusion.

{¶ 12} 3.  Relator ultimately returned to work until sometime in 2000 or 2002.[1]  At that time, relator was performing light duty office work.

{¶ 13} 4.   Relator made no attempts to return to work thereafter, has not participated in any vocational rehabilitation, and applied for Social Security Disability payments in 2007.

{¶ 14} 5.  Relator filed her first application for PTD compensation on May 10, 2006 at which time she was 59 years of age.

{¶ 15} 6.  Relator's application was heard before a staff hearing officer ("SHO") on January 3, 2007 and was denied.  The SHO relied on medical evidence to find that relator was capable of performing work at a sedentary level.  Thereafter, the SHO determined that relator's current age of 59 years would not prevent her from learning or performing jobs, that her high school, college, and training were positive vocational factors, and that her work experience was likewise a positive vocational factor.  The SHO specifically discussed a vocational report identifying numerous jobs which relator would be capable of performing.

---

[1] Relator's brief indicates she last worked in 2000, the day before she had a surgery. The commission uses the 2002 date relator indicated on her application for TTD compensation. The actual date is not relevant to these proceedings.

{¶ 16} 7.   On May 14, 2008, relator filed her second application for PTD compensation.  At that time, relator was 61 years old.

{¶ 17} 8.  Relator's application was heard before an SHO on October 22, 2009.  The SHO denied relator's request for PTD compensation based on medical reports which found she was capable of performing work at a sedentary level and her psychological conditions, in and of themselves, did not prevent her from successfully returning to work.  The SHO further noted that, relator was currently 62 years old, a high school graduate with one year of college experience who had fulfilled the requirements of a two-year course of study to become an x-ray technician.  The SHO noted further that the vocational assessment in the record outlined many sedentary work opportunities which were available to relator, noting further that relator had made no attempts to participate in any rehabilitation program.

{¶ 18} 9.  On September 19, 2014, relator filed an application for temporary total disability ("TTD") compensation from August 7, 2014 through February 3, 2015 and continuing.

{¶ 19} 10.   The matter was heard before a district hearing officer ("DHO") on October 15, 2014 and was denied.  The DHO specifically found that relator had left the workforce several years earlier and that there was insufficient evidence that she desired to re-enter the workforce.

{¶ 20} 11.   Relator appealed and the matter was heard before an SHO on November 24, 2014.  Although the SHO modified the prior DHO order, the SHO denied relator's request for TTD compensation finding as follows:

> The Injured Worker last worked in the work force in May 2002. Since that time she has received periods of disability. She was released to return to the work force sometime in 2009. The Injured Worker did not look for any work at that time. The Injured Worker began collecting Social Security Disability in 2007 which was later converted to Social Security Retirement. On 10/22/2009, permanent total disability was denied and it was found at that time that the Injured Worker was able to engage in sustained remunerative employment.
>
> The Injured Worker testified that about two years ago she did go to three different temporary agencies in order to find employment, but has not made any other efforts beyond those few attempts to find employment. There is no documentation to corroborate this statement.

> The Hearing Officer finds that this minimal effort is insufficient to find that the Injured Worker has made a valid effort to return to the work force. The Hearing Officer finds that for the Injured Worker has abandoned the workforce as early as 2009 and the minimal attempt to find employment two years ago is insufficient to find that the Injured Worker has not abandoned the work force.

{¶ 21} 12.  Relator's appeal was denied by order of the commission mailed December 18, 2014.

{¶ 22} 13.  Relator filed her third application for PTD compensation, which is the matter currently before us, on February 14, 2017.

{¶ 23} 14.  Relator's application was heard before an SHO on June 28, 2017 and was denied.  The SHO specifically determined that relator was ineligible to receive PTD compensation based on the November 7, 2009 commission order finding that she was capable of engaging in gainful employment and the November 29, 2014 order denying her TTD compensation on the basis that she had voluntarily abandoned the workforce.  Finding that there was no evidence that relator had returned to work or that she had engaged in a good-faith effort to secure suitable employment, the SHO denied her request for PTD compensation.  Specifically, the SHO stated:

> The Hearing Officer finds that the Injured Worker is ineligible to receive permanent total disability compensation. The Staff Hearing Officer['s] findings issued 11/07/2009 determined that the Injured Worker was capable of engaging in substantial gainful employment. The Staff Hearing Officer['s] findings issued 11/29/2014 denied temporary total disability compensation on the basis that the Injured Worker voluntarily had abandoned the work force by not engaging in a good faith effort to find employment. There is no evidence that the Injured Worker has returned to the workforce since the 2014 order or that she has engaged in a good faith effort to find work since 2014. The Hearing Officer, therefore, finds that the Injured Worker was abandoned the workforce voluntarily and is ineligible to receive permanent total disability compensation. In this instance the issues of whether the Injured Worker has reached maximum medical improvement and whether the medical evidence submitted with the application is sufficient need not be addressed as the issue of voluntary abandonment of the workforce is dispositive. All proof on file was reviewed and considered.

{¶ 24} 15. Relator's request for reconsideration was denied by order of the commission mailed August 5, 2017.

{¶ 25} 16. Thereafter, relator filed the instant mandamus action.

Conclusions of Law:

{¶ 26} For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

{¶ 27} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 28} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 29} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record and other relevant non-medical factors. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994). The commission must also specify in its order what

evidence has been relied upon and briefly explain the reasoning for its decision. *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991).

{¶ 30} Relator contends the commission abused its discretion by finding that she had abandoned the workforce as early as 2009 without determining whether or not she was capable of engaging in any sustained remunerative employment at that time. While relator concedes that PTD compensation is not payable when an employee has retired or otherwise voluntarily abandoned the workforce for reasons unrelated to the allowed injury, relator points to Ohio Adm.Code 4121-3-34(D)(1)(d), which provides:

> If, after hearing, the adjudicator finds that the injured worker voluntarily removed himself or herself from the work force, the injured worker shall be found not to be permanently and totally disabled. If evidence of voluntary removal or retirement is brought into issue, the adjudicator shall consider evidence that is submitted of the injured worker's medical condition at or near the time of removal/retirement.

{¶ 31} When the commission denied relator's second application for PTD compensation filed in 2008, the commission relied on four medical reports to find relator was currently capable of performing sustained remunerative employment at a sedentary level with restrictions and her allowed psychological conditions would not prohibit her from working. At that time, the SHO also noted that relator had made no attempts to participate in any rehabilitation program despite the fact that vocational assessments specifically identified numerous jobs for which relator was otherwise qualified. As such, there was medical evidence that relator was capable of working in 2008 through 2009, which is the relevant time period at issue.

{¶ 32} In 2014, relator's request for TTD compensation was denied following a hearing before an SHO on November 24, 2014. As indicated in the findings of fact, the SHO noted relator had not worked since 2002 and began collecting Social Security Disability in 2007. The SHO also noted that relator was found capable of engaging in sustained remunerative employment in 2009 when her second application for PTD compensation was denied. Apparently, relator testified, approximately two years earlier (2012), she went to three temporary agencies in order to find employment, but was unsuccessful. The SHO specifically noted relator did not present any documentation to substantiate her claim she

had tried to return to work. As a result, the SHO found her minimal effort to be insufficient and again concluded she had abandoned the workforce as early as 2009.

{¶ 33} The magistrate specifically notes relator did not file a mandamus action from either the commission's order in 2009 finding she had made no attempts to return to the workforce nor the November 2014 order denying her TTD compensation finding that she had abandoned the workforce. As such, finding relator had an adequate remedy at law at that time to challenge the determination that she had abandoned the workforce, relator cannot raise that issue for the first time almost ten years later.

{¶ 34} Relator cites this court's recent decision in *State ex rel. Digiacinto v. Indus. Comm.,* 10th Dist. No. 16AP-248, 2018-Ohio-1999, in support. Paul A. Digiacinto sustained a work-related injury during the course of his employment with Wheeling-Pittsburgh Steel Corporation. Digiacinto filed his first application for PTD compensation in June 2016. The matter was heard before an SHO who denied the application finding that Digiacinto was capable of medium level work. Based on Dr. Sethi's report and two vocational reports, the SHO concluded that he was able to return to his former job as a "tractor operator at a steel mill." *Id.* at ¶ 31. The SHO also found that Digiacinto had "last worked on 12/06/2001, at which time he was 52 years old." *Id.*

{¶ 35} Digiacinto filed his second application for PTD compensation in September 2013. Following a hearing before an SHO, the application was denied based on a finding Digiacinto was capable of functioning at the sedentary work level and, considering the non-medical disability factors, Digiacinto was capable of performing sustained remunerative employment.

{¶ 36} Digiacinto's claim was later additionally allowed for various psychological conditions and, in October 2014, the Ohio Bureau of Workers' Compensation ("bureau") awarded Digiacinto TTD compensation beginning February 7, 2014. In July 2015, an SHO extended TTD compensation to June 5, 2015 and continuing. In November 2015, a DHO terminated Digiacinto's compensation finding that his allowed psychological conditions had reached maximum medical improvement. Digiacinto did not administratively appeal that decision.

{¶ 37} In July 2015, Digiacinto filed his third application for PTD compensation. Following a hearing before an SHO, the application was granted. In the order, the SHO

specifically addressed the bureau's argument that Digiacinto had voluntarily abandoned the entire workforce for reasons unrelated to the allowed conditions in his claim and had failed to seek work or otherwise participate in vocational rehabilitation. The SHO determined the bureau had multiple opportunities to raise the issue previously (in 2014 when PTD compensation was denied for medical reasons, when TTD compensation was allowed in 2014, and in 2015 when TTD compensation was continued), but had failed to do so. The SHO stated further that Digiacinto had begun receiving Social Security Disability benefits in May 2002 due to the lumbar conditions allowed in his claim. A copy of the decision from the administrative law judge ("ALJ") was part of the record. The ALJ specifically found that Digiacinto's impairments were " 'severe' under the Social Security Act are as follows: lumbar disc herniations with foraminal stenosis and lumbar radiculopathy." *Id.* at ¶ 31. Digiacinto's workers' compensation claim was specifically allowed for lumbar disc herniations and lumbar radiculopathy. The ALJ found that Digiacinto could perform exertion demands of no more than sedentary work and that there were no jobs existing in significant numbers which he could perform.

{¶ 38} The bureau asked the commission to exercise its continuing jurisdiction and the commission did so. Following a hearing on February 25, 2016, the commission vacated the SHO's order and specifically found Digiacinto was ineligible to receive PTD compensation because he had voluntarily abandoned the workforce.

{¶ 39} Digiacinto filed a writ of mandamus in this court. The matter was referred to a magistrate who found the commission's finding that the bureau was barred from challenging Digiacinto's eligibility for PTD compensation because the bureau had failed to raise it earlier was a clear mistake of law and that, in ultimately denying Digiacinto PTD compensation, the commission did not abuse its discretion by failing to find the decision of the ALJ excused Digiacinto from searching for work or pursuing vocational rehabilitation. Digiacinto filed objections.

{¶ 40} This court sustained the objections to the magistrate's decision first finding that the magistrate erred in concluding that the commission had considered the ALJ's decision finding that Digiacinto was incapable of work. This court stated:

> Based on the evidence in the record, the ALJ's decision would seem to carry considerable weight in the commission's determination of Digiacinto's capability to work and,

> consequently, whether he left the workforce of his own volition. Under the facts presented, we find that the magistrate could not presume that the commission had considered "all the evidence" before it, specifically the ALJ's decision. [*State ex rel. Lovell v. Indus. Comm.*, 74 Ohio St.3d 250, 252, (1996)]. As a result, we disagree with the magistrate's conclusion that the commission's failure to mention the ALJ's decision in the February 25, 2016 order was not an abuse of discretion.

*Id.* at ¶ 23.

{¶ 41} The magistrate had concluded that the ALJ's decision could not be relied on because the medical impairments underlying the ALJ's decision included the non-allowed condition of foraminal stenosis. Relying on *State ex rel. Waddle v. Indus. Comm.*, 67 Ohio St.3d 452 (1993), the magistrate concluded that relator could not use that non-allowed condition to show that he was excused from searching for work or pursuing vocational rehabilitation. Digiacinto argued that the magistrate's analysis was flawed because he merely submitted the ALJ's decision to show that he did not intentionally abandoned the workforce. This court concluded that the magistrate:

> [E]rred in upholding the commission's apparent failure to consider the ALJ's decision based on the magistrate's belief that the ALJ decision was intended to support Digiacinto's request for PTD compensation, when in fact the decision was not provided for that purpose.

*Id.* at ¶ 28.

{¶ 42} The magistrate disagrees with relator's argument that the above decision requires this court issue a writ of mandamus here. First, relator has not submitted a copy of the determination from the Social Security Administration granting her benefits. As such, unlike Digiacinto whose application for Social Security benefits was granted, in significant part, based on conditions allowed in his workers' compensation claim, neither the commission nor this court can review the reason Social Security benefits were awarded. Secondly, in the statement of facts prepared for the 2017 hearing, the commission specifically noted the following medical factors which are wholly unrelated to the allowed conditions in relator's workers' compensation case. Those medical conditions include: "Diabetes, hypothyroidism; heart attack (2015); cancer; anxiety, high blood pressure; sleep

deprivation." The magistrate specifically notes that those conditions are indeed significant and, it goes without saying, that they are not related to the allowed conditions in relator's claim.  Third, when her application for TTD compensation was denied, relator testified that she had approached three temporary agencies looking for work but was unsuccessful.  Clearly, relator attempted to refute the determination of voluntary abandonment but failed to present sufficient evidence.  As such, the magistrate finds that relator's reliance on *Digiacinto* is unpersuasive.

{¶ 43}  The record in the present case is clear.  On several occasions, the commission found, based on the allowed conditions in her claim, relator was capable of performing work activity at a sedentary level with restrictions.  Specifically, there is evidence relator was capable of working in 2009, the time period used by the commission to determine when she abandoned the workforce.  Although relator's treating physician indicated she could not work and did not release her to return to work, the fact remains the commission did not rely on her medical evidence; instead, the commission specifically found she was capable of working during the time periods at issue.  Despite that fact, relator never participated in any rehabilitation and never returned to work.

{¶ 44} Based on the foregoing, the magistrate finds that the commission did not abuse its discretion when it determined relator had voluntarily abandoned the workforce for reasons unrelated to the allowed conditions in her claim, and relator has not demonstrated she is entitled to a writ of mandamus.


/S/ MAGISTRATE
STEPHANIE BISCA


**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).